# EXHIBIT A

1

CROSNER LEGAL, P.C.

2

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com

3

Kurt D. Kessler (SBN 327334)

4

kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301

5

Beverly Hills, CA 90210
Tel: (866) 276-7637

6

Fax: (310) 510-6429

7

Attorneys for Plaintiff

8

9

**Electronically FILED by
Superior Court of California,
County of Los Angeles
7/02/2025 4:51 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
LOS ANGELES COUNTY**

10

MELISSA BURKETT, individually, and
on behalf of all others similarly situated,

11

12

Plaintiff,

13

v.

14

BIG HEART PET BRANDS, INC., a
Delaware corporation,

15

16

Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 25STCV19326

**CLASS ACTION COMPLAINT FOR**:

1. Violations of the Consumers Legal Remedies
   Act, Cal. Civ. Code §§ 1750, *et seq.*;

2. Violations of the Unfair Competition Law,
   Cal. Bus. & Prof. Code §§17200, *et seq*.; and

3. Breach of Express Warranty.

**DEMAND FOR JURY TRIAL**

CROSNER LEGAL, P.C.

## INTRODUCTION

1.      Plaintiff Melissa Burkett ("Plaintiff") on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this action against Big Heart Pet Brands, Inc. ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

2.      This is a California consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty.

3.      Defendant manufactures, distributes, advertises, markets, and sells "Dipped" Milk Bone® dog food biscuits. The packaging prominently displays on the front of the label that these Products[1] contain "**No Artificial Preservatives, Colors, Or Flavors.**"

4.      This statement is false. Each of the Products are made with manufactured citric acid— an artificial preservative ingredient used in dog food products.

5.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product for their pets that contains "No Artificial Preservatives, Colors, or Flavors."

6.      Plaintiff, who purchased the Products for her dogs in California, was deceived by Defendant's unlawful conduct and brings this action on her own behalf and on behalf of California consumers to remedy Defendant's unlawful acts.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

8.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of

---

[1] "Products" means all Milk Bone "Dipped" brand dog food products labeled as containing "No Artificial Preservatives, Colors, or Flavors" that include citric acid as an ingredient, including but not limited to **Milk Bone® Dipped Biscuits Baked with Real Peanut Butter** and **Milk Bone e® Dipped Biscuits Baked with Yogurt**.

1

CLASS ACTION COMPLAINT

California, and supplies goods within the State of California. It sells the Products in California to tens of thousands (and likely many more) to California consumers.

9.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs.

10.    The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

11.    Venue is proper pursuant to Civil Code Section 1780(d) because Defendant has done, and is doing, business in California, including in this judicial district.

## PARTIES

12.    Defendant Big Heart Pet Brands, Inc. is a Delaware corporation that maintains its principal place of business in Orrville, Ohio. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant represents that

2

1    it's a "company of pet lovers, and there's nothing more important to us than the quality and

2    safety of our products."[2]

3        13.    Plaintiff Melissa Burkett is a resident of California. Plaintiff purchased the

4    Products for her pets at a retail store in California during the class period. Plaintiff relied on

5    Defendant's deceptive advertising and labeling claims as set forth below.

6                                **FACTUAL ALLEGATIONS**

7    **"NO ARTIFICIAL PRESERVATIVES, COLORS, OR FLAVORS" IS PROMINENTLY DISPLAYED ON**

8                        **THE FRONT LABELS OF THE PRODUCTS**

9        14.    The front labels for each of the Products prominently state that the Products

10   contain "No Artificial Preservatives, Colors, or Flavors" thereby misleading reasonable

11   consumers into believing that the Products are free from artificial preservative ingredients.

12   However, each of the Products contains an artificial preservative called manufactured citric acid.

13       15.    Below is an example of a label for the Milk Bone® Dipped Biscuits Baked with

14   Real Peanut Butter Product:

CROSNER LEGAL, P.C.

---

27   [2] Frequently asked questions, available at https://www.milkbone.com/frequently-asked-
28   questions



16. The back of the label reinforces this representation, saying the below.

We take a tasty *wholesome* baked biscuit, then coat it with *awesomeness*. Milk-Bone® Dipped crunchy *coated* biscuits contain no artificial preservatives, flavors, or colors. They are treats you can feel good about giving, that you know your dog will *love*.

17. The ingredients list for peanut butter version of the Products is below.

INGREDIENTS: GROUND WHOLE WHEAT, SUGAR, PALM OIL, PEANUT BUTTER (DRY ROASTED PEANUTS, DEXTROSE, HYDROGENATED VEGETABLE OIL, SALT), PARTIALLY DEFATTED PEANUT FLOUR, CHICKEN FAT (MIXED TOCOPHEROLS USED AS A PRESERVATIVE), SALT, CORN STARCH, SUNFLOWER LECITHIN, CITRIC ACID (USED AS A PRESERVATIVE), MIXED TOCOPHEROLS (USED AS A PRESERVATIVE), ROSEMARY EXTRACT. NPO1

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18.    Below is an example of a label for the Milk Bone e® Dipped Biscuits Baked with Yogurt Product:



19.    The back of the label reinforces this representation, saying the below.

We take a tasty *wholesome* baked biscuit, then coat it with *awesomeness*. Milk-Bone® Dipped crunchy *coated* biscuits contain no artificial preservatives, flavors, or colors. They are treats you can feel good about giving, that you know your dog will *love*.

20.    The ingredients include: "CITRIC ACID (USED AS A PRESERVATIVE)."

CLASS ACTION COMPLAINT

**THE MANUFACTURED CITRIC ACID IN THE PRODUCTS IS ARTIFICIAL**

21.    Defendant uses artificial manufactured citric acid in the Products.[3] Commercial dog food manufactures, including Defendant, use a synthetic form of citric acid that is derived from heavy industrial processing.[4] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[5]

22.    For over a century, scientists have been actively creating mutant strains of *Aspergillus niger* to improve their usefulness for producing enzymes, citric acid, and other valuable compounds.[6] This process of intentionally inducing mutations is called mutagenesis.[7]

23.    "Throughout the last century, biotechnologists have developed *A. niger* into a multipurpose cell factory with a product portfolio worth billions of dollars each year."[8]

24.    "The biochemical foundations of the biosynthesis process of citric acid were elucidated in the 1950s with the discovery of glycolysis and the tricarboxylic acid cycle":[9]

---

[3] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ and attached as **Exhibit A**.

[4] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[5] *Id*; Pau Loke Show, et al., *Overview of citric acid production from Aspergillus niger*, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), available at https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[6] *See* Tong, Z., Zheng, X., Tong, Y. et al. *Systems metabolic engineering for citric acid production by Aspergillus niger in the post-genomic era*. MICROB CELL FACT 18, 28 (2019).*available at* https://doi.org/10.1186/s12934-019-1064-6

[7] *See id.*

[8] Timothy C. Cairns, Lars Barthel, Vera Meyer; *Something old, something new: challenges and developments in Aspergillus niger biotechnology*. ESSAYS BIOCHEM 26 July 2021; 65 (2): 213–224. doi: https://doi.org/10.1042/EBC20200139

[9] Książek, E. Citric Acid: Properties, *Microbial Production, and Applications in Industries*. MOLECULES 2024, 29, 22. https://doi.org/10.3390/molecules29010022

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT



Figure 2. Major milestones in the discovery and research of citric acid [28,31].

25.    "Until 1980, *Aspergillus niger* strains used in industrial production were obtained through screening and mutagenesis. Mutagenesis techniques are still in use and continue to yield positive results in improving biosynthesis efficiency. The most commonly used mutagens are physical factors (gamma and UV radiation), chemical factors, and hybrid methods that combine physical and chemical characteristics. The development of genetic engineering has allowed the

7

application of DNA recombination technologies to improve strains, with *Aspergillus niger* being used as a host for the expression of heterologous proteins."[10]

26.　　Thus, Defendant uses citric acid that is processed from man-made mutant strains of *Aspergillus niger*. This is an "artificial" industrial manufacturing process.

27.　　One of Defendant's competitors notes: citric acid is "[u]sed as a preservative, citric acid can cause digestive upset in dogs, including symptoms like vomiting and diarrhea. It's particularly harmful to dogs with sensitive stomachs or those prone to bladder stones."[11]

28.　　Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[12] Defendant does not use natural citric acid extracted from fruit in the Products as it has not been industrially made in this way since 1917.[13] This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919."[14] As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, **it is _not_ the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[15]

29.　　Manufactured citric acid contains residues of synthetic chemicals. The *Toxicology Reports Journal* article explains that "the potential presence of impurities or

---

[10] Książek, E. Citric Acid: Properties, *Microbial Production, and Applications in Industries*. MOLECULES 2024, 29, 22. https://doi.org/10.3390/molecules29010022

[11] https://puppercrust.com/blog/dog-nutrition/10-common-but-unhealthy-dog-treat-ingredients-to-avoid

[12] Sweis, *et al.*, **Exhibit A**.

[13] *See* Książek, E. Citric Acid: Properties, *Microbial Production, and Applications in Industries*. MOLECULES 2024, 29, 22. https://doi.org/10.3390/molecules29010022

[14] Sweis, *et al.*, **Exhibit A**.

[15] Sweis, *et al.*, **Exhibit A**.

CLASS ACTION COMPLAINT

fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[16] The article further explains:

> Given the thermotolerance of A. niger, there is great potential that byproducts of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies.[17]

30.     The Food and Drug Administration ("FDA") explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of n- octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. § 173.280 (emphasis added).

31.     Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. See 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

32.     The FDA has determined that manufactured citric acid is not natural; it is artificial.  The FDA has sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain citric acid as an ingredient. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products.[18] With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the

---

[16] Sweis, *et al.*,  **Exhibit A**.

[17] *Id.*

[18] *See* **Exhibit B** attached hereto.

CLASS ACTION COMPLAINT

"All Natural" claim on the label because the products contained a synthetic ingredient, citric acid.[19]

33.     Similarly, on August 16, 2001, the FDA sent Oak Tree Dairy Farm, Inc. ("Oak Tree") a warning letter regarding its "Oaktree Real Brewed Iced Tea," "Oaktree Fruit Punch," and "Oaktree All Natural Lemonade" products.[20] With respect to Oak Tree's "Oaktree Real Brewed Iced Tea," the FDA stated that this product could not bear the "100% Natural" and "All Natural" claims on the label because the product contained a synthetic ingredient, citric acid.[21]

34.     In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[22]

35.     The Environmental Protection Agency ("EPA") provides the following simple schematic of the manufacturing process for citric acid which includes the use of synthetic solvents like sulfuric acid:[23]



---

[19] *Id.*

[20] *See* **Exhibit C** attached hereto.

[21] *Id.*

[22] *See* **Exhibit D** attached hereto at page 2, highlighted.

[23] U.S. Environmental Protection Agency, *Citric Acid Supple Chain*, *available at* https://www.epa.gov/system/files/documents/2023-03/Citric+Acid+Supply+Chain+Profile.pdf

CLASS ACTION COMPLAINT

36.    Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[24] Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus nige*r to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested by consumers of products containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[25]

37.    Clinical Nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[26] Gregoire states, "Citric acid production has become a refined and highly prized industrial process." Gregoire note that the Aspergillus niger used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."[27]

38.    "Further genetic modification in the lab has taken place through the engineering of the glycolytic pathway, resulting in a metabolic-streamlining that facilitates greater citric acid production from sugar while shutting off side avenues of glycolysis."[28]

---

[24] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source

[25] *Id.*

[26] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

[27] *Id.*

[28] *Id.*

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

39.   "Mutagenesis has been used in recent years to improve the citric-acid producing strains so that they can be used in industrial applications. The most common methods include the use of mutagens to induce mutations on the parental strains. The mutagens utilized for improvements are gamma radiation, ultraviolet radiation and often chemical mutagens. For hyperproducer strains, a hybrid method that combines ultraviolet and chemical mutagens is used (Ratledge & Kristiansen Citation2001)."[29]

40.   Below is a schematic representation of the metabolic reactions involved in citric acid production, the enzymes (italics), the known feedback loops (dashed lines) and their locations within the cellular structure of *Aspergillus niger*:[30]



[29] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). Overview of citric acid production from Aspergillus niger. FRONTIERS IN LIFE SCIENCE, 8(3), 271–283, *available at* https://doi.org/10.1080/21553769.2015.1033653

[30] *Id.*

CROSNER LEGAL, P.C.

41.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[31] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[32] Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[33]

42.    Consumers understand "artificial" to mean that citric acid ***is not*** the industrial processes used by Defendant to produce the citric acid it places in the Products.

43.    Below are images of the chemical process used to create manufactured citric acid for use in food and beverage products – a process that is visibly artificial:






---

[31] *Artificial*, DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial

[32] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/artificial

[33] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial

CROSNER LEGAL, P.C.

**THE CITRIC ACID IN THE PRODUCTS FUNCTIONS AS A PRESERVATIVE**

44.     The ingredient panel for the Products notes that citric acid in the Products functions as a preservative by stating: "Citric Acid (Used As A Preservative)."

45.     The FDA defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[34]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

46.     The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties:[35]

---

[34] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

[35] *Preservatives,* BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

CROSNER LEGAL, P.C.

47.    The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[36]

48.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[37]

49.    Several academic journals also note the use of citric acid as a preservative.[38] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[39] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[40]

50.    A published research article title *Citrate in dog food* states: "Citric acid is characterized as preservative, within the category of technological additives, and produced by specific *Aspergillus niger* strains."[41]

---

[36] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[37] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

[38] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets,* WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[39] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[40] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[41] Beynen, AC. *Dog Food in Citrate.* (2023) *available at* https://www.researchgate.net/publication/376857678_Beynen_AC_2023_Citrate_in_dog_food

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

51.    European regulations state that citric acid used in animal feeds is in the "additive" category with "Function group: preservatives."[42] The regulations note that citric acid in animal feed is produced by *Aspergillus niger*.[43]

52.    Citric acid functions as a preservative in the Products regardless of whether Defendant intended to use citric acid as a preservative. Citric acid functions as a preservative even if it is also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[44]

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

53.    Consumers, like Plaintiff, relied on Defendant's "No Artificial Preservatives, Colors, or Flavors" labeling statement when purchasing food for their dogs. The "No Artificial Preservatives, Colors, or Flavors" statement on the labels of the Products is material to reasonable consumers.

54.    "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is

---

[42] Commission Implementing Regulation (EU) 2022/415 of 11 March 2022 concerning the authorisation of malic acid, citric acid produced by Aspergillus niger DSM 25794 or CGMCC 4513/CGMCC 5751 or CICC 40347/CGMCC 5343. Official J EU 2022; L85/6 *available at* https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32022R0415

[43] *Id.*

[44] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

CLASS ACTION COMPLAINT

(59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[45]

55.    The same holds true for pet food products. A survey conducted by Mintel "reported roughly 46% of new pet food products launched in 2023 are touting 'no additives/preservatives.'"[46] Moreover, "45% of pet owners said they prefer buying pet food that is free from artificial ingredients, their logic being that these products are healthier for their pets compared to those containing artificial ingredients."[47]

56.    The premium and specialty pet food market is continuing to grow, with pet owners opting to invest in premium and specialty pet foods that incorporate high quality and innovative ingredients.[48]

57.    The organic pet food market is expected to reach a valuation of $4.5 billion, as pet owners become more health-conscious and continue to seek natural food alternatives to ensure the well-being of their pets, placing an emphasis on fresh, nutrient-dense, and preservative-free pet food options.[49]

---

[45] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

[46] *Consumers show steadfast preference for all-natural pet food*, PET FOOD PROCESSING, *available at* https://www.petfoodprocessing.net/articles/17347-consumers-show-steadfast-preference-for-all-natural-pet-food#:~:text=Mintel%20reported%20roughly%2046%25%20of,claims%20at%2021%25%20of%20products.

[47] *Id.*

[48] *Pet Foods Ingredient Market*, MARKETS AND MARKETS, available at https://www.marketsandmarkets.com/Market-Reports/global-pet-food-and-care-products-market-147.html?

[49] *Organic Pet Food Market Poised for 7.8% CAGR Growth, Reaching USD 4.50 Billion by 2035* ,available at https://www.morningstar.com/news/accesswire/989072msn/organic-pet-food-market-poised-for-78-cagr-growth-reaching-usd-450-billion-by-2035-future-market-insights-inc

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

58.     Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised.

59.     Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial preservative ingredient.

**PLAINTIFF'S PURCHASE OF THE PRODUCTS**

60.     Plaintiff Melissa Burkett purchased Defendant's Milk Bone Dipped Biscuits Baked With Real Peanut Butter and Milk Bone Dipped Biscuits Baked With Yogurt for her dogs from Target and/or Walmart stores located in California in 2024 and 2025. Plaintiff saw and relied on the "No Artificial Preservatives, Colors, or Flavors" claim on the labels of the Product. Plaintiff would not have purchased the Product, or would have paid less for the Product, had she known that the Product actually contains an artificial preservative in citric acid. She paid approximately $10.50 for each of the Products.

61.     As a result, Plaintiff suffered injury in fact when she spent money to purchase the Product she would not have purchased, or would have paid less for, absent Defendant's misconduct.

62.     Plaintiff desires to purchase the Product again if the labels of the products were accurate and if the products actually contained "No Artificial Preservatives, Colors, or Flavors." However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products. Further, Plaintiff is not a food scientist and will not know if the Products are re-formulated to truthfully contain no artificial preservatives making her at imminent risk of being harmed.

**NO ADEQUATE REMEDY AT LAW**

63.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class

18

1    members who purchased the Products more than three years prior to the filing of the complaint

2    will be barred from recovery if equitable relief were not permitted under the UCL.

3         64.    Legal remedies that require more "stringent" proof, and are therefore harder to

4    obtain, are not "equally prompt and certain."

5         65.    Plaintiff is pleading the UCL claim in the alternative and asserts entitlement to

6    equitable relief to recover the amounts paid for the Product to the extent those amounts (in whole

7    or in part) are deemed not recoverable as damages for Plaintiff's legal claims.

8         66.    Plaintiff lacks an adequate remedy at law if the amount of damages is less than

9    the price paid for the goods and restitution and/or injunctive relief may also be more certain,

10    prompt, and efficient than other legal remedies.

11         67.    Damages might be deemed not recoverable for Plaintiff's legal claims—

12    specifically, because the UCL claim covers more conduct and therefore may be less burdensome

13    to prove. This is because the scope of actionable misconduct under the unfair prong of the UCL

14    is broader than the other causes of action asserted herein, and may be less burdensome to prove

15    than the CLRA and breach of express warranty. It includes Defendant's overall unfair marketing

16    scheme to promote and brand the Products, across a multitude of media platforms, including the

17    product labels, packaging, and online advertisements, over a long period of time, in order to gain

18    an unfair advantage over competitor products without the deceptive claims.

19         68.    Plaintiff and class members may also be entitled to restitution under the UCL,

20    while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is

21    limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease,

22    any goods or services for personal, family, or household purposes) and other statutorily

23    enumerated conduct).

24         69.    A primary litigation objective in this litigation is to obtain injunctive relief.

25    Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant

26    continues to misrepresent the Products as containing "No Artificial Preservatives, Colors, or

27    Flavors" when the Products actually contain an artificial preservative ingredient.

28

CROSNER LEGAL, P.C.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

70.     Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

71.     Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial preservative ingredient. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages).

72.     Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

73.     It is premature to determine whether an adequate remedy at law exists. No discovery has been conducted, and no expert reports have been exchanged. Defendant's internal documents may provide insight into different damages theories such as restitution in the form of the profits gained attributable to the conduct at issue.

**CLASS ACTION ALLEGATIONS**

74.     Plaintiff brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following Class:

> All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

75.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

76.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

77.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

79.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.      Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.      Whether Plaintiff and the Class are entitled to injunctive relief;

e.      Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

80.     Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

81.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

82.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

CLASS ACTION COMPLAINT

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

83.      Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

84.      Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

85.      Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq.***

86.      Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

87.      Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

88.      At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

89.      At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

90.      At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

91.     The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

92.     Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Preservatives, Colors, or Flavors." Defendant failed to disclose that the Products contain an artificial preservative ingredient called citric acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial preservative ingredient to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)     Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)     Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)     Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)     Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

93.     Defendant violated the CLRA because the Products were prominently advertised as containing "No Artificial Preservatives, Colors, or Flavors," but, in reality, the Products contain an artificial preservative called citric acid. Defendant knew or should have known that consumers would want to know that the Products contain an artificial preservative.

94.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

95.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

96.     Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices

24

alleged herein. Plaintiff also seeks actual damages, punitive damages, and attorneys' fees and costs for Defendant's violations of the CLRA.

97.     Pursuant to California Civil Code section 1782, Plaintiff sent Defendant a written demand letter by certified mail return receipt requesting that Defendant remedy the violations alleged herein. More than thirty days have passed after Defendant received Plaintiff's demand letter and Defendant failed to take any corrective action. Thus, Plaintiff seeks actual and punitive damages in addition to injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

98.     Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing that this action was commenced in a proper forum.

<u>SECOND CLAIM FOR RELIEF</u>

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

99.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

100.    Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

101.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

102.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties.

103.    Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

25

CROSNER LEGAL, P.C.

104. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising.

105. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial preservative) of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions.

106. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

107. Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no artificial preservatives.

108. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

109. Defendant's wrongful business practices and violations of the UCL are ongoing.

110. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10

CROSNER LEGAL, P.C.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

111.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

112.    Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

113.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

114.    Plaintiff brings this claim for breach of express warranty individually and on behalf of the Class against Defendant.

115.    As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "No Artificial Preservatives, Colors, or Flavors."

116.    Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain "No Artificial Preservatives, Colors, or Flavors."

117.    Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

118.    In fact, the Products do not conform to Defendant's representations because the Products contain an artificial preservative called citric acid. By falsely representing the Products in this way, Defendant breached express warranties.

119.    Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

120.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

**REQUEST FOR RELIEF**

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1    f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts

2  awarded; and

3    g.      Ordering such other and further relief as may be just and proper.

4                              **JURY DEMAND**

5    Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

6  Dated: July 2, 2025                    CROSNER LEGAL, P.C.

7                                    By:  */s/ Craig W. Straub*

8                                         Craig W. Straub

9                                    9440 Santa Monica Blvd. Suite 301
                                     Beverly Hills, CA 90210
10                                   Tel: (866) 276-7637
                                     Fax: (310) 510-6429
11                                   craig@crosnerlegal.com

12                                   Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, Craig W. Straub, declare as follows:

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this judicial district. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed July 2, 2025 at San Diego, California.

CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*
Craig W. Straub

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com

CROSNER LEGAL, P.C.

30

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Craig W. Straub (SBN 249032) Kurt D. Kessler (327334)
Crosner Legal, P.C. 9440 Santa Monica Blvd. Suite 301 Beverly Hills, CA 90210

TELEPHONE NO.: (866) 276-7637     FAX NO.: (310) 510-6429
EMAIL ADDRESS: craig@crosnerlegal.com, kurt@crosnerlegal.com
ATTORNEY FOR *(Name):* Plaintiff, Melissa Burkett

FOR COURT USE ONLY

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/02/2025 4:51 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Burkett v. Big Heart Pet Brands, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 25STCV19326  JUDGE:  DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 3-  Cal. Civ. Code §§ 1750, Cal. Bus. & Prof. Code §§17200, breach of express warranty
5. This case [x] is [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 2, 2025
Craig W. Straub
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courts.ca.gov |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner
    Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic
    relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                    **Page 2 of 2**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Burkett v. Big Heart Pet Brands, Inc. | 25STCV19326 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Burkett v. Big Heart Pet Brands, Inc. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Burkett v. Big Heart Pet Brands, Inc. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>                    Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Burkett v. Big Heart Pet Brands, Inc. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE<br>Burkett v. Big Heart Pet Brands, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: |
|---|---|
| CITY:              STATE:              ZIP CODE: | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __07/02/2025__                                  _____
                                                                                   (SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.
2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.
3.  Civil Case Cover Sheet Judicial Council form CM-010.
4.  Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5.  Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6.  A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BIG HEART PET BRANDS, INC., a Delaware Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MELISSA BURKETT, individually and on behalf of all others similarly situated,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
7/07/2025 9:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Gnade, Deputy Clerk**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court - Central

Stanley Mosk Courthouse - 111 N. Hill Street Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):*
25STCV19326

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Craig W. Straub, Crosner Legal P.C. 9440 Santa Monica Blvd. Suite 301 Beverly Hills, CA 90210 Tel: (866) 276-7637

DATE: 07/07/2025   David W. Slayton, Executive Officer/Clerk of Court   Clerk, by _J. Gnade_ , Deputy
*(Fecha)*   *(Secretario)*   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form   Save this form   Clear this form



*Superior Court of California, County of Los Angeles*
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**<u>Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)</u>**
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/02/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ J. Covarrubias _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>25STCV19326 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Samantha  Jessner | 7 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 07/03/2025
    (Date)

David W. Slayton, Executive Officer / Clerk of Court

By J. Covarrubias _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

FOR COURT USE ONLY

COURTHOUSE ADDRESS:

Spring Street Courthouse
312 North Spring Street, Los Angeles, CA, 90012

**FILED**
Superior Court of California
County of Los Angeles

07/14/2025

David W. Slayton, Executive Officer / Clerk of Court

By: _____ A. Morales _____ Deputy

PLAINTIFF(S)/PETITIONER(S):

Melissa Burkett

DEFENDANT(S)/RESPONDENT(S):

Big Heart Pet Brands, Inc.

## CLERK'S CERTIFICATE OF SERVICE
## BY ELECTRONIC SERVICE

CASE NUMBER:

25STCV19326

I, David W. Slayton, Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein and that on this date I served the

**Minute Order of 07/14/2025**
**Initial Status Conference Order of 07/14/2025**

upon each party or counsel of record in the above entitled action by electronically serving to the party or parties at the electronic address as listed below:

**"Kurt D. Kessler" <kurt@crosnerlegal.com>,**
**"Craig W. Straub" <craig@crosnerlegal.com>**

The electronic transmission originated from the Superior Court of California, County of Los Angeles email address eService-DoNotReply@lacourt.org at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA, 90012.

Dated: 07/14/2025

David W. Slayton, Executive Officer / Clerk of Court

By:  A. Morales _____

Deputy Clerk

**Page 1 of 1**

**CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE**

LASC CIV 310 NEW 03/25
For Mandatory Use

Code of Civil Procedure § 1013b(4)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 7

**25STCV19326**                                                        July 14, 2025
**MELISSA BURKETT vs BIG HEART PET BRANDS, INC.**                      2:44 PM


Judge: Honorable Samantha Jessner          CSR: None
Judicial Assistant: A. Morales             ERM: None
Courtroom Assistant: T. Bivins             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances



**NATURE OF PROCEEDINGS:** Court Order Re: Newly Assigned Case

By this order, the Court determines this case to be Complex according to Rule 3.400 of the
California Rules of Court. The Clerk's Office has assigned this case to this department for all
purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one
thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex
fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent
or adverse party, not to exceed, for each separate case number, a total of eighteen thousand
dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties.
All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of
service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The
stay continues at least until the Initial Status Conference. Initial Status Conference is set for
09/29/2025 at 10:00 AM in this department. At least ten (10) days prior to the Initial Status
Conference, counsel for all parties must discuss the issues set forth in the Initial Status
Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response
Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the
Court and the parties manage this complex case by developing an orderly schedule for briefing,
discovery, and court hearings. The parties are informally encouraged to exchange documents and
information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice
of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of
Appearance shall not constitute a waiver of any substantive or procedural challenge to the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 7

**25STCV19326**                                                                July 14, 2025
**MELISSA BURKETT vs BIG HEART PET BRANDS, INC.**                               2:44 PM


Judge: Honorable Samantha Jessner          CSR: None
Judicial Assistant: A. Morales             ERM: None
Courtroom Assistant: T. Bivins             Deputy Sheriff: None

Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to
Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended
Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a
Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to
https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for
"Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's
First Amended General Order of May 3, 2019, particularly including the provisions therein
requiring Bookmarking with links to primary documents and citations; that Order is available on
the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every
new case to use an approved third-party cloud service that provides an electronic message board.
In order to facilitate communication with counsel prior to the Initial Status Conference, the
parties must sign-up with the e-service provider at least ten (10) court days in advance of the
Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and
parties to make audio or video appearances in Los Angeles County courtrooms.
LACourtConnect technology provides a secure, safe and convenient way to attend hearings
remotely. A key element of the Court's Access LACourt YOUR WAY program to provide
services and access to justice, LACourtConnect is intended to enhance social distancing and
change the traditional in-person courtroom appearance model. See
https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS")
portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the
Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1
is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own
arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information
on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Counsel are directed to access the following link for further information on procedures in the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 7

**25STCV19326**                                                      July 14, 2025
**MELISSA BURKETT vs BIG HEART PET BRANDS, INC.**                      2:44 PM

Judge: Honorable Samantha Jessner          CSR: None
Judicial Assistant: A. Morales             ERM: None
Courtroom Assistant: T. Bivins             Deputy Sheriff: None

Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Certificate of Service is attached.

Minute Order                                                          Page 3 of 3

**FILED**
Superior Court of California
County of Los Angeles

07/14/2025

David W. Slayton, Executive Officer / Clerk of Court

By: _____ A. Morales _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

MELISSA BURKETT

           Plaintiff,

 vs.

BIG HEART PET BRANDS, INC.

         Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 25STCV19326

**INITIAL STATUS CONFERENCE ORDER**

DATE: 09/29/2025

TIME: 10:00 a.m.

PLACE: DEPARTMENT 7, SPRING ST.

**\*\*JOINT STATEMENT DUE FIVE COURT DAYS IN ADVANCE OF HEARING\*\***

This case has been assigned for all purposes to Judge Samantha P. Jessner.

Please read the important courtroom information for Department 7 posted on the court's website (www.lacourt.org) (go to "Courtroom Information on the Home page) which contains answers to many frequently asked questions.

The Court has scheduled an Initial Status Conference on the date and at the time set out above in Department 7, Second Floor, 312 North Spring Street, Los Angeles, California 90012.

Department 7 utilizes the LACourtConnect video and telephonic conference platform for hearings. Parties and counsel are invited to appear in person or via LACourtConnect. The Court has no preference. When appearing via LACourtConnect, please do so from a quiet place. Rules concerning court attire apply.

<u>**COUNSEL TO FILE NOTICE OF APPEARANCE;**</u>
<u>**PLEADING STAY UNTIL FURTHER ORDER**</u>

The Court orders each defendant promptly following service of summons and complaint to file a Notice of Appearance of counsel.  The Notice of Appearance does not affect or prejudice any counsel's or party's legal position on any issue including without limitation any jurisdictional challenge.

The Court hereby issues a stay on the filing and service of any other pleadings.

Notwithstanding the stay, (a) a party may file notice of related case and (b) a plaintiff may file an amended complaint to add a PAGA claim to a wage and hour putative class action provided that no answer to the original complaint has been filed.

The Court issues the stay to provide for an orderly schedule for briefing and hearings on procedural and substantive pleadings challenges. This stay precludes without limitation the filing of any demurrer, motion to strike, motion challenging the jurisdiction of the Court or cross-complaint until further order of the Court.

<u>**DISCOVERY STAY UNTIL FURTHER ORDER**</u>

The Court hereby imposes a stay on all discovery proceedings until further order of the Court including any obligation to make initial disclosures. This stay does not prevent the parties from informally exchanging documents or information that may assist in their initial evaluation of the issues presented in this case. This stay ordered by the Court for purposes of case management is not a stay under Code of Civil Procedure section 583.310 unless the Court so orders.

ISC ORDER

## **INITIAL STATUS CONFERENCE**

The purpose of the Initial Status Conference is to identify a fair and efficient way of proceeding with the case. The Court encourages the parties to propose approaches to case management.

The Court orders counsel for all parties to confer via telephone, videoconference or other real time technology, at least **ten court days** before the Initial Status Conference. The purpose of the meeting is to discuss the issues set out below so that counsel can prepare a Joint Statement to be filed with the Court **five court days** before the Initial Status Conference.

All parties in Department 7 must sign up with an e-service provider and activate a message board so that the Court can communicate with counsel prior to the ISC. The Court orders the parties to agree upon and sign up with an e-service provider (Case Anywhere, or File & ServeXpress) at least **five court days** before the ISC. So that the Court can promptly issue an order appointing the e-service provider, the Court orders Plaintiff's counsel to identify the selected e-service provider by sending an email to Dept. 7 at SSCDept7@lacourt.org upon agreement of an e-service provider.

Please remember that **electronic service** is not the same **as electronic filing**.

## **PREPARING FOR THE ISC AND PREPARATION OF THE JOINT STATEMENT**

Plaintiff's counsel should take the lead in preparing the Joint Statement and in ensuring that it includes a brief description of the facts and causes of action and addresses the following questions.  To the extent the parties disagree on any question, each party should set out their position in a separate paragraph beneath the issue or question heading.

1.   Are there any issues of judicial recusal or disqualification?

2.   The case type:

(a)    wage and hour class action with or without PAGA;

(b)    other class action (describe);

1        (c)    construction defect;

2        (d)    mass tort;

3        (e)    insurance coverage; or

4        (f)    other (describe).

5        Each party should *briefly* describe the nature of the case, and the claims and

6    defenses.  For wage and hour class actions, the parties should describe, to the extent

7    known, the nature of the defendant's business, plaintiff's relevant work duties and the

8    alleged work violation(s).

9        3.   The status of service and notice(s) of appearance(s) by defendant(s).

10       4.   Whether any party intends to challenge jurisdiction (subject matter or

11   personal).

12       5.   The parties' selected e-service provider (Case Anywhere or File &

13   ServeXpress).

14       6.   What provisions should be made for the preservation of evidence.

15       7.   What provisions should be made for electronically stored evidence. [1]

16       8.   Do the parties need a limited- or non-dissemination protective order? (The

17   court recommends the model protective orders found on the Los Angeles Superior Court

18   website (www.lacourt.org) under the Complex Court tab ("Civil Tools for Litigators."))

19       9.   A proposed deadline for adding and serving any new parties.

20       10.  Should either or both the pleading and discovery stay be lifted and, if so, when

21   and for what purposes?

22

23

24   [1] If electronically stored information must be produced, the court encourages the parties'

25   respective IT consultants/employees to participate in the meet and confer process addressing
     (1) the information management systems employed by the parties; (2) the location and

26   custodians of information (including the identification of network and email servers and hard
     drives maintained by target custodians); (3) the format in which electronically stored

27   information will be produced; (4) the type of ESI that will be produced, i.e., data files, emails,

28   etc.; and (5) appropriate search criteria for focused requests.

11.  The identification of any "related case". (Answer question 15 for wage and hour class action/PAGA matters.)

12.  A service list identifying all primary and secondary counsel along with their firm names, addresses, telephone numbers and email addresses.

13.  Recommended orders to be made at the ISC.

14.  Recommended date for the next status conference.

**FOR WAGE AND HOUR PUTATIVE CLASS ACTIONS/PAGA MATTERS**

15.  Each party should state, if known: (a) the estimated size of any putative class; (b) a description (including case numbers) of any related or potentially related cases pending in other departments of the Los Angeles Superior Court or any other court (including class actions with overlapping class definitions); and (c) whether a class representative has or is expected to file a PAGA claim either as an amendment in this lawsuit or filed separately, independent of this lawsuit—and if so, whether such separate lawsuit should be deemed related to this lawsuit; and if not, why not. (Parties are encouraged to review their obligations regarding notices of related cases.)

16.  Does any party intend to move to compel arbitration? Before filing a motion to compel arbitration, the defendant must provide the plaintiff with a copy of the arbitration agreement, and meet and confer with counsel to determine whether the plaintiff will oppose the motion to compel arbitration.

The defendant so intending to move is required to provide a copy of the relevant agreements purportedly containing the arbitration provisions well before the ISC meet and confer, and plaintiff's counsel is expected to have formed a position as to whether plaintiff will or will not oppose a demand for arbitration and whether discovery should be opened relative to the subject of arbitration.

17.  The parties' positions on "class list" discovery and arrangements for a *Belaire-West* notice process.

1        18.  Are the parties committed to engage in early mediation and if so, (a) when is

2  the mediation scheduled to occur and (b) what accommodations, if any, do they parties seek

3  from the court?  (Note: this should be discussed with clients well in advance of the ISC so

4  that counsel are in a position to make commitments at the ISC.)

5

6                 **PLAINTIFF'S COUNSEL TO SERVE THIS ISC ORDER**

7        The Court orders Plaintiff's counsel to serve this Initial Status Conference Order

8  on counsel for all other parties, or if counsel's identity is not known, on the parties within

9  seven days of service hereof.

10

11

12

13

14  Dated:  07/14/2025

                                      Samantha Jessner / Judge

15                           Samantha P. Jessner
                           Judge of the Superior Court

16

17

18

19

20

21

22

23

24

25

26

27

28

ISC ORDER